Gene L. MORETTI, Petitioner–Appellant,

v.

## COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

### No. 415, Docket 95–4036.

United States Court of Appeals, Second Circuit.

Submitted Oct. 6, 1995.

Decided Feb. 23, 1996.

Gene L. Moretti, petitioner-appellant pro se.

Loretta C. Argrett, Assistant Attorney General, United States Department of Justice, Tax Division (Gary R. Allen, William S. Estabrook, Linda E. Mosakowski, Tax Division Attorneys, on the brief), for respondent-appellee.

Before: ALTIMARI, McLAUGHLIN, and PARKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Petitioner-appellant Gene L. Moretti ("Moretti") appeals from two orders of the United States Tax Court sustaining certain deficiencies and additions to Moretti's 1990 and 1991 federal income taxes, after a bench trial, and denying Moretti's claims to certain tax refunds and carryovers. For the reasons stated below, we affirm in part the rulings of the Tax Court, reverse in part, vacate the judgment, and remand the matter to the Tax Court for a new trial.

### Background

Moretti and his wife, Lorraine Moretti ("Mrs. Moretti"), who were married in 1957, failed to file federal income tax returns for the 1990 and 1991 tax years. Pursuant to section 6212(a) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 6212(a) (1994), the Commissioner of the Internal Revenue Service ("Commissioner") issued notices of deficiency to the Morettis for the two tax years. The Commissioner determined deficiencies for the years at issue in the amounts of $1,924 and $4,713, respectively, and tax additions in the amounts of $285 and $1,081.36, respectively. In making these determinations, the Commissioner deemed the Morettis' filing status as "married, filing separate."

The Morettis' subsequently filed income tax returns for the two years, claiming a "married, filing joint return" status. Moretti claimed earned taxable income of $17,564 for 1990, and $29,698 for 1991. The Morettis' 1990 return listed Schedule C business losses of $31,763 from Mrs. Moretti's T-shirt and souvenir business. Their 1991 return listed a $14,012 loss of income based on a carryover from the previous year of Mrs. Moretti's business loss, as well as a Schedule C loss of $1,130 from Mr. Moretti's photography business.

After filing the returns, Moretti petitioned the United States Tax Court for a redetermination of the Commissioner's deficiency and tax addition determinations for the two tax years at issue. According to Moretti, the Commissioner used the wrong filing status and should have considered the Morettis' Schedule C losses in determining the tax deficiencies and additions. Moretti also contended that, in light of the Morettis' correct filing status and the claimed losses, he and his wife actually overpaid their taxes in 1990 and 1991 through their employment withholdings, and were due refunds. In addition, Moretti claimed that he had overpaid his 1989 taxes by $698, for which he was entitled to a refund.

A trial of the issues raised in Moretti's petitions was conducted before the Tax Court on October 18, 1994; Moretti appeared *pro se*. The Tax Court first considered a motion by the Commissioner to dismiss Moretti's claim that he was entitled to a refund for overpaying his 1989 income taxes. The Commissioner argued that the Tax Court lacked jurisdiction to hear the claim, because the Commissioner had not sent a statutory notice of deficiency to Moretti for the 1989 tax year. Moretti contended that a proposed individual income tax assessment letter sent to him by the Commissioner dated April 15, 1993, in which Moretti was notified of the Commissioner's computation of Moretti's estimated tax, penalties and interest for the 1989 tax year, based upon income reported by banks and Moretti's employer, constituted a notice of deficiency within the meaning of I.R.C. § 6212(a). Attached to the proposed tax assessment were the Commissioner's calculations of the proposed deficiency and tax penalties. The Tax Court held that the assessment did not constitute a statutory notice of deficiency, and granted the Commissioner's motion to dismiss the claim for a refund of the alleged 1989 tax year overpayment.

The Tax Court next considered the issue of the Morettis' filing status. Moretti offered his marriage certificate to show that he was legally married. Despite marital difficulties

resulting in his wife's moving to Florida, Moretti contended he had gone to live with his wife in Florida in 1989 and 1990. When asked by the court whether he would produce his wife as a witness, he informed the court that he would not because she was ill and he did not want to exacerbate her condition. The Tax Court found Moretti's testimony "most unbelievable," and determined that Moretti failed to overcome the presumption of correctness to which the Commissioner's determination was entitled.

The Tax Court then turned to Moretti's alleged Schedule C business losses. In accordance with a pre-trial order requiring documents proposed for use at trial to be identified and exchanged at least 15 days prior to trial, Moretti had submitted to the Commissioner copies of a "contract of sale" to his wife and various cancelled checks. Moretti claimed that these documents proved the $31,763 loss from his wife's T-shirt and souvenir business. On the day before the trial was to commence, and again on the morning of the trial, Moretti submitted to the Commissioner additional documents which he claimed further supported the loss and also substantiated his contention that his photography business was a for-profit business for which Schedule C business losses could be claimed. The Commissioner opposed the documents' admission.

With regard to the documents exchanged by Moretti immediately before the trial, the Commissioner argued that the documents should not be admitted as evidence because they were not timely provided to him as required by the pre-trial order. Moretti claimed that the documents concerning his wife's business had only recently been obtained from Florida. He also explained that the documents concerning his photography business were produced at such a late stage because the Commissioner had first contended that Moretti's photography business was a not-for-profit business which did not qualify for Schedule C business loss deductions only a week prior to the trial. The Tax Court was not persuaded by Moretti's arguments and excluded all of the documents produced immediately prior to the trial.

With regard to the documents which were timely produced, namely the "contract of sale" and the checks which allegedly documented the $31,763 loss from Mrs. Moretti's business, the Commissioner objected to these documents' admissibility on the grounds that they could not be authenticated, were not original copies, and contained hearsay. The Tax Court agreed with the Commissioner and, over Mr. Moretti's objections, granted the Commissioner's motion to exclude all of the documents.

Frustrated with the Tax Court's ruling excluding all of his documentary evidence, Moretti accused the Tax Court of being partial to the Commissioner. Thereafter, he refused to make any further arguments, stating, "I'm wasting my time in this Court." Accordingly, the case was taken under submission. Later that day, the Tax Court issued a bench opinion in which it summarized its findings and oral rulings, and included further rulings on Moretti's objections to the Commissioner's deficiency and addition determinations. In addition to the rulings that Moretti failed to meet his burden of proof concerning his marital filing status and failed to put in any evidence substantiating the claimed Schedule C losses, the Tax Court (1) held that Moretti was liable for tax additions under I.R.C. § 6651(a) for 1990 and 1991, because he failed to file his tax returns for those years by the prescribed dates and he did not show that his failure was due to reasonable cause rather than willful neglect; (2) held that Moretti was not due a refund for alleged overpayments in the 1990 tax year, because the amount of any such refund was limited to the amount of tax Moretti had paid in the two years prior to receiving his notice of deficiency for the 1990 tax year, which in this case was zero; (3) disallowed Moretti's carryover of a claimed net operating loss for the year 1991; and (4) ruled that Moretti was liable for an addition under I.R.C. § 6654(a) for the year 1991, because of insufficient withholdings of taxes that year. The Tax Court subsequently issued two orders finalizing its decision and judgment.

Moretti then brought the present appeal, challenging each of the Tax Court's rulings.

### Discussion

■ We review each of the Tax Court's rulings, keeping in mind that its "conclusions of law are examined *de novo,* while findings of fact are upheld unless clearly erroneous." *Friedman v. Commissioner of Internal Revenue,* 53 F.3d 523, 528 (2d Cir.1995). The Tax Court's application of the Federal Rules of Evidence, as well as its interpretation and application of its own procedural rules, is reviewed for abuse of discretion. *See Estate of Shafer v. Commissioner of Internal Revenue,* 749 F.2d 1216, 1218–19 (6th Cir.1984) (citing cases).

### 1. The 1989 Tax Refund

■ The Tax Court is a court of limited jurisdiction, and its jurisdiction can be exercised only pursuant to statutory authority. *Belloff v. Commissioner of Internal Revenue,* 996 F.2d 607, 611 (2d Cir.1993). The statutory authority granting the Tax Court jurisdiction to hear a taxpayer's claim for a redetermination of his or her tax liability is found in I.R.C. § 6213(a), which provides in relevant part that, subject to several exceptions not applicable here, "no assessment of a deficiency in respect of any tax imposed . . . and no levy or proceeding in court for its collection shall be made" until a notice of deficiency has been sent to the taxpayer in accordance with I.R.C. § 6212(a) and the 90 day period within which to file a petition for redetermination has elapsed. A notice of deficiency is, accordingly, considered the "jurisdictional prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability." *Laing v. United States,* 423 U.S. 161, 165 n. 4, 96 S.Ct. 473, 477 n. 4, 46 L.Ed.2d 416 (1976). *See also Deutsch v. Commissioner of Internal Revenue,* 599 F.2d 44, 45 (2d Cir.1979) ("[T]he Tax Court cannot assert jurisdiction unless a petition is filed within ninety days after a deficiency notice has been mailed by the Commissioner."), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980).

■ Moreover, where, as here, the taxpayer receives a notice of deficiency for a particular tax year and files a petition with the Tax Court for a redetermination of the stated deficiency, but appends to the petition a claim for a tax refund arising from overpayment of taxes in a year other than the tax year at issue in the notice, the Tax Court lacks jurisdiction to hear the refund claim. *See* I.R.C. § 6214(b) (providing, in pertinent part, that in redetermining a deficiency of income tax for any taxable year, the Tax Court "shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid."); *see also Belloff,* 996 F.2d at 613; *Kartrude v. Commissioner of Internal Revenue,* 925 F.2d 1379, 1385 (11th Cir.1991). In order for the taxpayer to properly invoke the jurisdiction of the Tax Court to hear a refund claim, the Commissioner must have mailed to the taxpayer a notice of deficiency for the tax year in which the refund is being claimed.

■ Moretti contends that the Tax Court erred in holding that it did not have jurisdiction to consider his claim concerning the 1989 tax year refund. According to Moretti, the proposed individual income tax assessment sent to him by the Commissioner dated April 15, 1993, constitutes a "notice of deficiency" under I.R.C. § 6212(a). His argument is unpersuasive.

■ While the Tax Code "does not prescribe the appropriate content of a notice of deficiency, at a minimum it must identify the taxpayer, indicate that the Commissioner has made a determination of deficiency, and specify the taxable year and amount of the deficiency." *Andrew Crispo Gallery, Inc. v. Commissioner of Internal Revenue,* 16 F.3d 1336, 1340 (2d Cir.1994). In the instant case, the April 15, 1993, proposed tax assessment letter does not contain a final determination of deficiency. Rather, the letter is merely a preliminary, pre-filing notification letter of an estimated tax assessment and penalties. As such, it does not constitute a notice of deficiency under section 6212(a). *See, e.g., id.* at 1340–41 (distinguishing cases where "the Commissioner had made no determination of deficiency because the notice of deficiency in each case revealed on its face that it had been issued without any prior inspection of the taxpayer's income tax return."); *Gaska v. Commissioner of Internal Revenue,* 800

F.2d 633, 634–35 (6th Cir.1986) (following other circuits in holding "that the pre-filing notification letter was not a notice of deficiency, and so did not give plaintiffs their 'ticket to the tax court.' ").

Accordingly, the Tax Court was correct to hold that it did not have jurisdiction to consider Moretti's claim concerning the refund for the 1989 tax year.

## 2. Marital Filing Status

 A notice of deficiency sent to a taxpayer pursuant to section 6212 "carries a presumption of correctness requiring the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination was erroneous." *Andrew Crispo Gallery,* 16 F.3d at 1341. To rebut the Commissioner's determination that Moretti's filing status was "married filing separately," Moretti presented his marriage certificate, dated May, 1957, as evidence that he was in fact married to his wife. He also testified that although he had been separated from his wife "on and off" since the 1970s, he had "cohabitate[d]" with her in Florida during the 1989 and 1990 tax years. He further testified that he remained "legally" married to her, and that every tax return he had filed from 1957 to 1990 indicated that his status was "married, filing jointly." Finally, on cross-examination, he testified that his wife had co-signed their 1990 tax return.

To determine the validity of Moretti's filing status, the Tax Court inquired as to whether Mrs. Moretti would testify at the hearing. Moretti answered that she would not testify because she was physically ill, and added that he would "not let [the I.R.S.] put a nail in . . . her coffin. . . ." After considering the testimony, the Tax Court held that Moretti had "made no serious effort" to prove he was entitled to a joint filing status, and that he "utterly failed to meet his burden of proof" on the issue. The Commissioner contends that the Tax Court's ruling is not erroneous. We disagree.

Under the I.R.C., a taxpayer who is married is entitled to file a joint tax return with his or her spouse. *See* I.R.C. § 6013(a). A taxpayer is not, however, considered "married" if he or she "is *legally* separated from

his [or her] spouse under a decree of divorce or of separate maintenance." I.R.C. § 6013(d)(2) (emphasis added). In interpreting the same language contained in the predecessor statute to section 6013(d)(2), courts have held that the section contemplates legal separation under a final decree of divorce or a decree of separate maintenance. *See, e.g., Eccles v. Commissioner of Internal Revenue,* 19 T.C. 1049, 1051, 1054, 1953 WL 287 (an interlocutory divorce decree under Utah law does not constitute final legal separation within the meaning of the statute, thus permitting joint filing), *aff'd,* 208 F.2d 796 (4th Cir.1953) (per curiam); *Lane v. Commissioner of Internal Revenue,* 26 T.C. 405, 407, 1956 WL 662 (1956) (same rule under California interlocutory divorce decree); *Seaman v. Commissioner of Internal Revenue,* 29 T.C.M. (CCH) 1331, 1333, 1970 WL 1813 (1970) ("[B]oth the statutory language and the language in [the Senate Report] couple the term 'legally separated' with the phrase 'under a decree of divorce,' and the latter phrase cannot be ignored."), *aff'd,* 479 F.2d 336 (9th Cir.1973).

 Moretti clearly rebutted the correctness of the Commissioner's filing status determination when he submitted his marriage certificate and testified that (1) he had always filed jointly with his wife, and (2) he continued to cohabit with her from time to time during 1989 and 1990. Moretti having done so, it was then necessary for the Commissioner to come forward with evidence showing that Moretti was "legally separated" from his wife under a divorce decree or a decree of separate maintenance, and, thus, was not entitled to the joint filing status under section 6013(d)(2). *See Demkowicz v. Commissioner of Internal Revenue,* 551 F.2d 929, 931 (3d Cir.1977) (once a taxpayer overcomes the presumption of correctness by presenting competent and relevant evidence, the Commissioner has the burden of coming forward with evidence).

Accordingly, the Tax Court's ruling that Moretti failed to overcome the presumption of correctness is erroneous. In order for the Commissioner's determination to remain valid, the Commissioner must come forward with evidence showing Moretti is in fact le-

gally separated or divorced from his wife within the meaning of the statute.

### 3. Schedule C Business Losses

In analyzing the Tax Court's ruling regarding Moretti's claimed business loss deductions, it is necessary to separately consider three categories of documents: (1) documents related to Moretti's photography business that were produced immediately prior to the trial; (2) documents related to Mrs. Moretti's business that were produced immediately prior to trial; and (3) documents related to Mrs. Moretti's business that were timely produced in accordance with the Tax Court's pre-trial order.

■■■ Preliminarily, we note that Rule 143(a) of the Tax Court Rules provides, in relevant part, that trials before the Tax Court shall be conducted in accordance with the Federal Rules of Evidence. *See* I.R.C. § 7453, Tax.Ct.R. 143(a); *accord Ruberto v. Commissioner of Internal Revenue*, 774 F.2d 61, 63 (2d Cir.1985). We also note that *pro se* litigants like Moretti are given some latitude in prosecuting their cases. *See id.* at 64 (in an action where the Tax Court precluded a *pro se* petitioner from submitting photocopies of checks, the Tax Court abused its discretion in "fail[ing] to give the [petitioners] a reasonable opportunity to obtain and submit the original checks which they claimed they could produce."); *Christensen v. Commissioner of Internal Revenue*, 786 F.2d 1382, 1384–85 (9th Cir.1986) (tax court is required to liberally construe *pro se* litigant's pleadings when applying its rules of practice and procedure).

■■■ As to the first category of documents, Moretti asserts that his production of the photography business documents was in response to the Commissioner's claim that Moretti's photography business was not-for-profit. Moretti contends that the Commissioner first asserted this claim one week prior to the trial, and as a result, he could not have produced the documents any earlier. We hold that because the issue of whether Moretti's photography business is for profit or not was raised by the Commissioner on the eve of trial, the Tax Court abused its discretion in excluding the documents on the

ground that they were untimely produced. If Moretti is to be bound by the pre-trial order as to that evidence which he may seek to introduce, fundamental fairness dictates that the Commissioner is concomitantly bound by that order as to which arguments he may raise. While, ordinarily, the trial court does not abuse its discretion in denying a party's request to raise a new issue on the eve of trial when that issue could have been raised earlier, *see, e.g., Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 749–50 (2d Cir.1984) (denial of motion to assert a claim of indemnification on the eve of trial is not an abuse of discretion, as the claim could have been raised earlier by moving to amend the answer); *Durrett v. Commissioner of Internal Revenue*, 71 F.3d 515, 518 (5th Cir.1996) (denial of taxpayers' motion eight days before trial to amend the petition in order to state a new claim for tax credit is not an abuse of discretion, where the claim could have been raised earlier), where, as here, the trial court allows one party to raise such an eleventh hour argument, it is not consistent with "sound discretion" to deny the other party the chance to introduce evidence in opposition thereto.

Accordingly, the Tax Court abused its discretion in excluding the documents produced by Moretti to support the for-profit nature of his business, on the ground that the documents were untimely produced. Moretti must be allowed the opportunity to offer into evidence the documents he claims will refute the Commissioner's position, provided he complies with the applicable rules of evidence.

■■■ As to the second category of documents, the Tax Court did not abuse its discretion in excluding documents related to Mrs. Moretti's T-shirt and souvenir business that were untimely produced under the provisions of the pre-trial order. Moretti was required to produce these documents at least fifteen days before the first day of the trial. Because he did not do so, the Tax Court acted within its discretion in excluding the documents.

■■■ With regard to the third category of documents—namely, the copy of an agree-

ment for sale and copies of checks, some drafted by Mrs. Moretti and others being cashier's or bank checks,—the Tax Court abused its discretion in excluding these documents. The Commissioner objected to the admission of the sale agreement on the grounds that (1) Moretti could not authenticate the agreement, (2) the document was a copy of an original and therefore violated the best evidence rule, and (3) the document contained hearsay, because Moretti was not a party to the agreement and none of the parties listed in the agreement were present in court. Without hearing argument from Moretti, the Tax Court agreed with the Commissioner and excluded the agreement. The Commissioner raised similar objections to the admission of the copies of the checks. Again, without giving Moretti a chance to respond, the Tax Court stated that "[t]hese xerox copies have no value," and granted the Commissioner's motion to exclude the copies of the checks.

It was an abuse of discretion for the Tax Court not to allow Mr. Moretti the opportunity to lay a proper foundation for admitting the copies of the contract of sale and checks into evidence. With regard to authentication, Rule 901(b)(1) of the Federal Rules of Evidence provides that authentication of a document is met by the testimony of a witness with knowledge that the matter is what it is claimed to be. Moretti should be given the opportunity to produce such a witness, or to attempt to authenticate the documents by any of the means delineated in Rules 901 or 902.

Likewise, Moretti should be given the opportunity to lay a proper foundation for admitting the documents under one or more of the hearsay exceptions delineated in Rule 803 of the Federal Rules of Evidence. Toward this end, we note that the checks and contract for sale may well be admissible under the "business records" exception set forth in Rule 803(6). *See United States v. Palmiotti,* 254 F.2d 491, 497 (2d Cir.1958) (checks that were records of company's payments to extortionist and kept in ordinary course of business were properly received to corroborate testimony that payments were made to extortionist); *see also United States*

*v. Palmer,* 766 F.2d 1441, 1446 (10th Cir. 1985); *United States v. Sheppard,* 688 F.2d 952, 953 (5th Cir.1982) (*per curiam*). Mrs. Moretti's testimony would cure any hearsay problem concerning the checks she drafted.

Lastly, notwithstanding the best evidence rule, Rule 1003 of the Federal Rules of Evidence provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The Tax Court Rules contain a similar provision, which states in relevant part that, "[a] clearly legible copy of any ... document may be offered directly in evidence in lieu of the original, where there is no objection, or where the original is available but admission of a copy is authorized by the Court; ...." I.R.C. § 7453, Tax Ct.R. 143(d). By simply stating that "[t]hese xerox copies have no value," the Tax Court made no inquiry into the applicability of Rule 1003 or Tax Ct.R. 143(d). Moreover, the Tax Court's hollow explanation for the documents' exclusion precluded Moretti from rectifying his mistakes and laying the proper foundation for their admission. Moretti was entitled to more latitude. *See Ruberto,* 774 F.2d at 64.

We emphasize, however, that if Moretti wishes to pursue his claims, then he must follow the applicable evidentiary rules and lay the proper foundation for the admission of his documents into evidence, including calling all relevant witnesses. While the demands of litigation may appear great to a *pro se* litigant, Moretti's exasperation with the court's rulings does not excuse the need to follow the procedures necessary to establish his case.

### 4. Tax Additions

■ The Commissioner imposed the following tax additions on Moretti: for the tax year 1990, $285 pursuant to I.R.C. § 6651(a); for the tax year 1991, $885.25 pursuant to I.R.C. § 6651(a) and $196.11 pursuant to I.R.C. § 6654(a). Section 6651(a) provides for certain specified additions to a taxpayer's income taxes if the tax returns are not timely filed, unless the failure to timely file the

return "is due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a). Section 6654(a) provides for certain specified additions to income taxes if the taxpayer fails to pay, or underpays, an estimated income tax. *See* I.R.C. § 6654(a).

The Tax Court held that Moretti did not provide an explanation for his failure to timely file his 1990 and 1991 tax returns and, accordingly, affirmed the additions imposed by the Commissioner. In light of our discussion in the previous sections, the Tax Court abused its discretion in affirming the Commissioner's additions without giving Moretti a meaningful opportunity to be heard and the latitude which adheres to his *pro se* status. With respect to the additions imposed under section 6651(a), Moretti should be given the opportunity to explain whether his failure to timely file was "due to reasonable cause and not due to willful neglect." Likewise, the Tax Court must reconsider the addition under section 6654(a) for the 1991 tax year, because it may find that the Commissioner overestimated Moretti's tax liability by using the wrong filing status and/or because Moretti is entitled to the business loss deductions he claims, and therefore Moretti's withholdings may well have satisfied his tax liability for that year.

### 5. Refund for Claimed Overpayment in 1990

■ As explained earlier, Moretti claimed that, because he and his wife were entitled to a $31,763 business loss resulting from Mrs. Moretti's T-shirt and souvenir business, he overpaid his 1990 income tax withholdings and was entitled to a refund of $820.48. The Commissioner contended that, even if Moretti was entitled to the business loss, Moretti's maximum potential refund was, in this case, zero, because of the refund limitation provisions contained in I.R.C. §§ 6511(b)(2)(B) and 6512(b)(3)(B). The Tax Court agreed with the Commissioner, and held that Moretti was entitled to a zero refund.

■ Where, as here, the Commissioner issues a notice of deficiency and the taxpayer has failed to file a tax return as of the date the notice is mailed, the Tax Court, in any subsequent petition by the taxpayer seeking a refund of overpaid taxes in the Tax Court, is limited in determining the amount of the refund to the taxes paid by the taxpayer in the two years prior to the date the notice of deficiency was mailed. *See* I.R.C. §§ 6511(b)(2) and 6512(b)(3)(B); *Commissioner of Internal Revenue v. Lundy,* — U.S. —, —, 116 S.Ct. 647, 652, 133 L.Ed.2d 611 (1996); *Davison v. Commissioner of Internal Revenue,* 64 T.C.M. (CCH) 1517, 1518–19, 1992 WL 366470 (1992), *aff'd without opinion,* 9 F.3d 1538 (2d Cir.1993). Moretti's notice of deficiency for the 1990 tax year was mailed on July 20, 1993, and Moretti had not filed his 1990 tax return by that date. As a result, Moretti's claimed refund is limited to the amount of 1990 taxes paid by him in the two years prior to the mailing of the notice of deficiency. According to the Commissioner, the only tax payments made by Moretti for the 1990 tax year were the withholding credits from his wages, which under the I.R.C. are deemed to have been paid as of April 15, 1991. *See* I.R.C. § 6513(b)(1). Because the withholding taxes were paid more than two years before the notice of deficiency was mailed, the Tax Court correctly determined that Moretti was entitled to a zero refund.

Moretti also contends, however, that part of the refund relates to a "worthless debt," and, therefore, the applicable limitation period is not the two year period set forth in section 6511(b)(2), but rather the seven year limitation period set forth in I.R.C. § 6511(d)(1). Under section 6511(d)(1), the limitation period for filing a refund claim is extended to seven years from the date the tax return was to be filed if the refund relates to an overpayment of tax resulting from the deduction of a debt "which became worthless." *See* I.R.C. § 6511(d)(1)(A). If Moretti is able to provide evidence of the alleged Schedule C business losses for the 1990 tax year, the Tax Court must also consider whether sufficient evidence was presented to support Moretti's claim that the debt was "worthless," thus triggering the seven year limitation period in section 6511(d)(1). Should Moretti present such evidence, then the amount of Moretti's refund may exceed the refund limitation under sec-

tion 6511(b)(2), to the extent of the amount of the overpayment attributable to the worthless debt.

### 6. Carryover of 1990 Net Operating Loss

 In his 1991 tax return, Moretti claimed a net operating loss ("NOL") deduction in the amount of $14,012.27, based on a "carryover" of the Schedule C business loss claimed in his 1990 tax return. Under the I.R.C., NOLs, generally defined as the excess of deductions allowed by the income tax law over the taxpayer's gross income, *see* I.R.C. § 172(c), are first applied to the year of the loss, and any unused portion of the NOL is then applied against the income of each of the three years preceding the year of the loss (the NOL is "carried back"). If there is still any unused portion of the NOL after the carryback years, it is applied to the years following the loss (the NOL is "carried over") for a maximum of fifteen years, or until the NOL dissipates. *See* I.R.C. § 172(b)(1)(A). The carryback of NOLs can be waived by the taxpayer, provided that the waiver is made by "the due date (including extensions of time) for filing the taxpayer's return" for the taxable year in which the NOL occurs. I.R.C. § 172(b)(3).

 The Tax Court denied Moretti's claim for the carryover of the 1990 NOL to the 1991 tax year, on the ground that, because Moretti failed to timely file his 1990 tax return, he failed to make his election to waive the carryback of the NOL by the due date for filing the 1990 tax return, namely April 15, 1991. In addition, because Moretti failed to substantiate the carryback for the three years preceding 1990, the Tax Court disallowed the carryover. On appeal, the Commissioner contends that the Tax Court correctly decided the carryover issue, because (1) Moretti failed to establish any of the losses claimed for the 1990 tax year resulting in the NOL, and (2) assuming there was a loss shown, Moretti failed to demonstrate that some or all of the NOL could have been applied against the income of the three years prior to 1990.

The Tax Court correctly ruled that Moretti failed to elect to waive the carryback provi-

sions, and therefore was not entitled automatically to carry over the NOL on the basis of such a waiver. Moretti neither made the waiver on the date the income tax return was due, nor obtained an extension. However, the Tax Court erred in disallowing Moretti's carryover of the NOL on the basis of his failure to substantiate the carryback for the three years preceding 1990. Moretti was given neither the opportunity to substantiate the claimed NOL in 1990, nor the chance to demonstrate the extent to which the NOL applied to the carryback years. Moreover, he was not allowed to demonstrate that any unused portion of the NOL remained after the carryback that could be carried forward into 1991. Provided that he is able to offer evidence to this effect, Moretti should be given the opportunity to establish that there was a NOL in 1990, and that it carried back and forward for the relevant years.

### Conclusion

In sum we hold that the Tax Court (1) correctly held that it did not have jurisdiction to consider Moretti's claim concerning the refund for the 1989 tax year; (2) erred in ruling that Moretti did not overcome the presumption of correctness concerning the Commissioner's determination of Moretti's tax filing status; (3) abused its discretion in excluding the documents produced by Moretti to support the for-profit nature of his business, on the ground that the documents were untimely produced; (4) properly acted within its discretion in excluding documents related to Mrs. Moretti's business that were untimely produced under the provisions of the Tax Court's pre-trial order; (5) abused its discretion in excluding the documents related to Mrs. Moretti's business that were timely produced, namely the copy of an agreement for sale and copies of checks; (6) abused its discretion in affirming the Commissioner's additions under sections 6651(a); (7) committed clear error in ruling that the additions under 6654(a) were warranted; (8) correctly ruled that Moretti was entitled to a zero refund for the claimed overpayment in 1990 on the basis of the two year refund limitation set forth in section 6511(b)(2), except to the extent that Moretti can show a

portion of the overpayment was attributable to "worthless debt" triggering a seven year limitation period under I.R.C. § 6511(d)(1); (9) correctly ruled that Moretti failed to elect to waive the carryback provisions, and therefore was not entitled to automatically carryover the claimed NOL on the basis of such a waiver pursuant to section 172(b)(3); and (10) abused its discretion in disallowing Moretti's carrying over the NOL on the ground that Moretti failed to substantiate the carryback for the three years preceding 1990.

For the reasons stated above, the judgment of the Tax Court is affirmed in part, reversed in part, vacated, and remanded for proceedings consistent with this opinion.